FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

2016 MAY 27  P 1: 13

CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

| | | |
|---|---|---|
| **BETHESDA CHEVY CHASE SURGERY** | * | |
| **CENTER, LLC,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Lead Case No.:  GJH-15-3496** |
| **v.** | * | |
| | * | |
| **UNITEDHEALTHCARE INSURANCE** | * | |
| **COMPANY,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff Bethesda Chevy Chase Surgery Center, LLC ("Bethesda Surgery") initiated

these consolidated actions in the District Court of Maryland for Montgomery County, Maryland.

Following removal to this Court by Defendant UnitedHealthcare Insurance Company ("United"),

Bethesda Surgery filed motions to remand in each action. *See* ECF No. 12.[1] The Court

consolidated the cases on May 20, 2016 because they involve common issues of law and fact.

ECF No. 24; *see also* Fed. R. Civ. P. 42(a). No hearing is necessary to resolve the pending

motions to remand. *See* Local Rule 105.6 (D. Md.). For the reasons that follow, Plaintiff's

Motions are denied.

**I.    BACKGROUND**

Each of these consolidated cases revolves around the same or similar facts. Bethesda

Surgery is an outpatient surgery center located in Bethesda, Maryland. ECF No. 1 at ¶ 1. In each

case, Bethesda Surgery alleged that on various dates, Bethesda Surgery staff performed a

---

[1] Unless otherwise indicated, all references to the docket refer to filings made in Civil Case No. 15-3496.

medically necessary surgery on a patient who is insured by United under a policy with out-of-network benefits. Bethesda Surgery alleges that it submitted claims to United in varying amounts and that United, in most cases, wholly denied coverage, and in other cases, woefully underpaid for the service. *See* ECF No. 2.[2] The only information identifying the patient in the various Complaints is the last four digits of the patient's United identification number, the date on which Bethesda Surgery performed the procedure, the amount of the varying claims, and the date United processed the claims. *Id.*

Before filing these Complaints, counsel for Bethesda Surgery, Ian Friedman, contacted an individual at United, Anna Gimble, seeking informal resolution of these disputes and requesting that the claims be reprocessed. See ECF No. 12-3 at ¶¶ 4–5. Gimble is the Vice President of Network Management for United's "West Region," and is in charge of network operations in Hawaii and Idaho and for relations with surgery centers that are part of United's network of providers throughout the West Region. ECF No. 13-6 at ¶¶ 1–2. Gimble is not an attorney, but she had been in contact with Friedman in his capacity as general counsel for a different corporation regarding business dealings between their two companies. *See id.* at ¶¶ 3, 5; ECF No. 12-3 at ¶¶ 3, 5. In July 2015, Friedman asked Gimble if she could have someone at United review the claims at issue in this case to see if United was willing to reconsider payment on them. ECF No. 13-6 at ¶ 6; ECF No. 12-3 at ¶ 5. Gimble agreed to inquire into the matters, and, on July 10, 2015, Friedman provided Gimble with the Explanation of Benefits ("EOB") for each of the patients where Bethesda Surgery had not been paid or was underpaid. *See* ECF No. 12-4. The EOBs included, among other things, the patients' names, their full United identification numbers, the dates that Bethesda provided service, the service charges, and the United claim

---

[2] *See also* Civil Case No. GJH-15-3668, ECF No. 2 (Dec. 1, 2015).

numbers. *See id.* Friedman asked Gimble to inform him by July 17, 2015 whether she would be able to "do anything" with the cases. *Id.* at 2.[3]

Despite some back and forth in communication between Friedman and Gimble regarding the claims and whether United would reprocess them, the claims continued unresolved through August 2015. *See* ECF No. 12-3 at ¶¶ 8–10. On September 21, 2015, Bethesda Surgery initiated these separate actions in state court.[4] *See* ECF No. 2. United was deemed to have been served with the respective Complaints on September 29, 2015, the date on which Plaintiffs served them on the Maryland Insurance Administration. *See* Md. Code Ann., Ins., § 8-407; *see also* ECF No. 1 at ¶ 2; ECF No. 3.

Because none of the Complaints included the patients' full name or similar identifying information, on October 13, 2015, counsel for United, Rita L. Concepción, contacted Friedman asking that he provide her with each patients' name, United identification number, date of birth, and date of service, along with a copy of the EOBs. ECF No. 13-5 at ¶¶ 5–7. Friedman responded with the requested information on October 19, 2015. *Id.* at ¶ 8; *see also* ECF No. 13-5. On November 17, 2015, United removed each case to this Court on the grounds of federal question jurisdiction. In the Notices of Removal, United indicated that the information provided on October 19, 2015 allowed United for the first time to identify the patients' identities. In doing so, United determined that each patient was insured under an employee welfare benefit plan administered or insured by United and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* ECF No. 1 at ¶ 9. Specifically, United indicated that any claim asserted by Bethesda Surgery for recovery under the terms of such benefit plans

---

[3] All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[4] Although the Complaints in each of these cases were filed on the same date, the dates that follow differ in some respects in the various cases, but not in any way that is material to the resolution of these Motions.

arising under state law has been completely preempted by ERISA, and that the cases were therefore properly removed under 28 U.S.C. §§ 1331 and 1441(a). *Id.* at ¶¶ 11–16.

## II.   DISCUSSION

Bethesda Surgery does not dispute that these cases fall within the Court's original jurisdiction on the ground that any state law claims raised in the Complaints are completely preempted by ERISA. *See* ECF No. 12-1; *see also Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 231–32 (4th Cir. 1993) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62, 107 S. Ct. 1542 (1987)) (explaining that removal is proper for state law actions preempted by ERISA). Rather, Bethesda Surgery contends that remand is necessary because United failed to timely remove these actions. ECF No. 12-1 at 4–7.

Ordinarily, a notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable," however, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3).

In analyzing these two separate provisions of § 1446, the United States Court of Appeals for the Fourth Circuit explained that:

> [O]nly where an initial pleading reveals a ground for removal will the defendant be bound to file a notice of removal within 30 days. Where, however, such details are obscured or omitted, or indeed misstated, that circumstance makes the case "stated by the initial pleading" not removable, and the defendant will have 30 days from the revelation of grounds for removal in an amended pleading, motion, order, or other paper to file its notice of removal . . . .

4

*Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997). In *Lovern*, the Fourth Circuit rejected application of a subjective test for determining whether a case as "stated by the initial pleading" is one that is removable. In other words, the Fourth Circuit explained that it would "not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when." *Id.* Rather, to determine whether a case is removable, a court must "rely on the *face of the initial pleading* and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds *be apparent within the four corners of the initial pleading or subsequent paper*." *Id.* (emphasis added). This bright-line tests helps to "guard[] against premature and protective removals," and further "ensures that removal only occurs once the facts supporting removal are evident, thereby minimizing the potential for a 'cottage industry of removal litigation.'" *Dijkstra v. Carenbauer*, No. 5:11CV152, 2012 WL 1533485, at *5 (N.D.W. Va. May 1, 2012) (quoting *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005)).

Notwithstanding this objective test, other courts have noted that a defendant "must still apply a reasonable amount of intelligence in ascertaining removability." *Cutrone v. Mortgage Elec. Registration Sys., Inc.*, 749 F.3d 137, 143 (2d Cir. 2014) (internal quotation marks and citations omitted). A defendant may not, for instance, claim ignorance of its own domicile if it seeks to remove a case on the basis of diversity jurisdiction. *See, e.g., Mai Dang v. Target Corp.*, No. CIV.A. TDC-14-2215, 2014 WL 6705375, at *4 (D. Md. Nov. 26, 2014) (distinguishing *Lovern* and noting that "there was no possibility that Target did not know the situs of its principal place of business"). But a defendant is not obligated to conduct an investigation into the

possibility of removability.[5] *See Cutrone*, 749 F.3d at 143 ("[D]efendants have no independent

duty to investigate whether a case is removable"); *see also Graiser v. Visionworks of Am., Inc.*,

No. 16-3167, --- F.3d ---, 2016 WL 1359048, at *7 (6th Cir. Apr. 6, 2016); *Citrano v. John

Crane-Houdaille, Inc.*, 1 F. Supp. 3d 459, 465 & n.11 (D. Md. 2014); *Surgcenter of W.

Maryland, LLC v. Cigna Health & Life Ins. Co.*, No. CV DKC 15-3147, 2015 WL 9490225, at

*3 (D. Md. Dec. 30, 2015).

Here, there was insufficient evidence on the face of the Complaints to trigger the 30-day

deadline for removal under § 1446(b)(1). The only uniquely identifying information contained

therein was the last four digits of each patient's United identification number. Although Bethesda

Surgery contends that this information, along with the amount of its claim and the date of the

service provided, should alone be sufficient to trigger the 30-day deadline, this same argument

was recently rejected in a similar case in this district. In *Surgcenter of Western Maryland, LLC v.

Cigna Health & Life Insurance Co.*, Judge Chasanow explained:

> In order to state an ERISA claim, there must be an ERISA governed plan, a
> plaintiff with standing to sue under that plan, suit against an ERISA entity, and a
> complaint seeking relief available under ERISA. The complaint here is not
> brought by a plan participant, but rather by an assignee, although the assignment
> is not pled. The removal notice states that it could not be ascertained, from the
> complaint, what plan was involved in the claim, and that there might have been
> more than one potentially applicable plan[], including one not governed by
> ERISA. Not every insurance coverage dispute arises under an ERISA covered
> plan and, without precise information as to the identity of the beneficiary and the
> plan, a defendant cannot know that ERISA complete preemption might apply. The
> fact that Plaintiff was bringing suit under [an] ERISA-governed plan was
> "obscured" or "omitted" from the complaint and was not apparent from the four
> corners of the pleading.

---

[5] In support of its Motions, Bethesda Surgery relies in part on cases that have held that the 30-day clock for removal under § 1446(b)(1) was triggered where a complaint provides merely "a clue" that removal is available. ECF No. 12-1 at 4; *see also Kaneshiro v. N. Am. Co. for Life & Health Ins.*, 496 F. Supp. 452, 460 (D. Haw. 1980), *abrogated by Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005). That standard, however, has been repeatedly rejected in cases within and without the Fourth Circuit. *See, e.g., Dijkstra*, 2012 WL 1533485, at *4 ("The Fourth Circuit has never adopted [the] 'clue' test."); *see also Surgcenter*, 2015 WL 9490225, at *3.

2015 WL 9490225, at *3 (citation omitted). Here, too, the fact that these claims are governed by ERISA was obscured or omitted from the Complaints.[6] Although United could have consulted its records for relevant information to determine the removability of these actions, a plaintiff must provide sufficient information from which it could do so. *See id.* ("While ultimately Cigna can consult its own records for some relevant information, it cannot do so without at least some information from Plaintiff as to the identity of its assignor and the policy."); *but see Graiser*, 2016 WL 1359048, at *7 ("Visionworks could have investigated its own records to determine whether the case was removable under up-to-date sales figures. But Visionworks did not have a duty to do so."). Because the Complaints did not provide United with enough information to determine removability, the 30-day timeline under § 1446(b)(1) was not triggered.

Bethesda Surgery argues, however, that pre-litigation correspondence between Friedman and Gimble—in which Friedman identified each patient by name, and included their United identification number and the EOBs for each claim—constitutes "other paper" from which the basis of removal could have been ascertained.[7] ECF No. 12-1 at 6. In other words, because United had notice through that correspondence of the identities of the patients involved in the various Complaints before the actions were commenced, Bethesda Surgery contends that the 30-day deadline under § 1446(b)(3) began to run from the date the Complaints were filed. *Id.*

The language in § 1446(b)(3), which requires that removal occur within 30 days of a defendant's receipt of, *inter alia*, "other paper" from which it may be ascertained that the case is removable, has been interpreted by the Fourth Circuit to include "any information received by the defendant, whether communicated in a formal or informal manner." *Yarnevic v. Brink's, Inc.*,

---

[6] Notably, United has submitted evidence indicating that, ordinarily, "attempting to identify a member with just the minimal information contained in the Complaint either does not identify the right member or identifies any number of members." ECF No. 13-5 at ¶ 5.

[7] This argument is raised in each case except for Civil Case Nos. GJH-15-3672 & GJH-15-3678. Those cases involve patients who were not mentioned in the communications between Friedman and Gimble.

102 F.3d 753, 755 (4th Cir. 1996) (internal quotation marks and citation omitted). Thus, the term

"other paper" can include, for example, "requests for admissions, deposition testimony,

settlement offers, answers to interrogatories, briefs, and product identification documents given

in discovery." *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 845 (S.D.W. Va. 2008).

Nonetheless, Bethesda Surgery's argument is unpersuasive. First, the statutory language

of § 1446(b)(3) makes plain that the meaning of the term "other paper" in that provision refers to

documents exchanged *after the case has been initiated*. The United States Court of Appeals for

the Fifth Circuit explained as much in *Chapman v. Powermatic, Inc.*:

> The plain language of [§ 1446(b)(3)[8]] requires that if an "other paper" is to start
> the thirty-day time period, a defendant must receive the "other paper" after
> receiving the initial pleading. [Section 1446(b)(3)] applies by its terms only "if
> the case stated by the initial pleading is not removable . . . ." 28 U.S.C. [§
> 1446(b)(3)]. More important, [§ 1446(b)(3)] requires that the defendant remove
> the case, if at all, within 30 days after receipt of an "other paper" from which the
> defendant may first ascertain that the case is removable. Logic dictates that a
> defendant can "first" ascertain whether a case is removable from an "other paper"
> only after receipt of both the initial pleading and that "other paper"; and therefore
> the thirty-day time period begins to run, not from the receipt of the initial
> pleading, but rather from the receipt of the "other paper" revealing that the case is
> removable. [The plaintiff] would have us adopt a rule which would be clearly
> inconsistent with the plain language of [§ 1446(b)(3)], which states that "a notice
> of removal may be filed within thirty days after receipt by the defendant . . . [of
> an] other paper from which it may first be ascertained that the case is one which is
> or has become removable . . . ." By its plain terms the statute requires that if an
> "other paper" is to trigger the thirty-day time period of [§ 1446(b)(3)], the
> defendant must receive the "other paper" only after it receives the initial pleading.
> Finally, we believe that our holding that the "other paper" must be received after
> the filing of the initial pleading is supported by the recitation in [§ 1446(b)(3)] of
> the words "amended pleading, motion, order" before the words "or other paper,"
> which clearly refer to actions normally and logically occurring after the filing of
> the initial pleading.

969 F.2d 160, 164 (5th Cir. 1992) (footnote omitted); *see also Carvalho v. Equifax Info. Servs.*,

LLC, 629 F.3d 876, 886 (9th Cir. 2010) (concluding that "any document received prior to receipt

---

[8] The removal statute has been subsequently amended and reorganized since *Chapman*, but the relevant language
that now appears in § 1446(b)(3) remains unchanged.

of the initial pleading cannot trigger the second thirty-day removal period" under § 1446(b)(3)).

This Court agrees with *Chapman*'s analysis of the relevant statutory language, as have multiple

others. *See, e.g.*, *Lambertson v. Go Fit, LLC*, 918 F. Supp. 2d 1283, 1286 (S.D. Fla. 2013); *Boeck*

*v. Pac. Cycle, Inc.*, No. 10-CV-667A, 2011 WL 98493, at *2 (W.D.N.Y. Jan. 12, 2011); *Svoboda*

*v. Deutsche Bank Sec., Inc.*, No. C-10-01788 JCS, 2010 WL 3077101, at *4 (N.D. Cal. Aug. 6,

2010).

Moreover, in support of its decision in *Lovern*, the Fourth Circuit cited *Chapman* as

consistent with the objective test that it adopted for determining whether a case is removable.

*Lovern*, 121 F.3d at 162. Indeed, in describing the relevant test, the Fourth Circuit explained that,

to determine whether a case is removable, a court must look to the "four corners of the initial

pleading *or subsequent paper.*" *Id.* (emphasis added). This Court assumes that the Fourth Circuit

meant what it said when it used the term "subsequent" to describe what documents might

provide the relevant information necessary to determine whether a case is removable.

Bethesda Surgery points to *Dugdale v. Nationwide Mutual Fire Insurance Co.*, No.

CIV.A. 4:05CV138, 2006 WL 335628 (E.D. Va. Feb. 14, 2006) to support its position that

information exchanged between the parties before a lawsuit is filed may constitute "other paper"

triggering a 30-day removal period under § 1446(b)(3) upon the filing of the initial pleading. In

that case, the plaintiff sought to recover against Nationwide Mutual Fire Insurance Company

("Nationwide") for bad faith claims handling pursuant to a flood insurance policy. Those claims,

however, were preempted by federal law because the policy was issued pursuant to the National

Flood Insurance Program ("NFIP")—a federal program administered by the Federal Emergency

Management Agency ("FEMA"). *Id.* at *1–4. Before filing suit, the plaintiff had sent Nationwide

a demand letter containing the information necessary for Nationwide to discover that the policy

9

at issue was one that was issued pursuant to the NFIP. *Id.* at *6. The *Dugdale* court concluded that the demand letter was an "other paper" pursuant to § 1446(b)(3) which put Nationwide on notice that the plaintiff was asserting claims that were preempted by federal law and the court "simply [would] not allow Nationwide to ignore pertinent evidence in its possession or the legal impact of such." *Id.* at *7 The court noted that, because the relevant facts, namely, the plaintiff's policy and claim numbers, were in Nationwide's possession before the lawsuit was commenced, there was no need for a "'mini-trial' or inquiry into 'who knew what and when.'" *Id.* at * 6 (quoting *Lovern*, 121 F.3d at 162).

It is far from clear, however, that the reasoning of *Dugdale* would apply in a case where, rather than send a formal demand letter, counsel for Bethesda Surgery—who initially was in contact with United's employee in his role as general counsel for a different company— informally communicated with a non-attorney employee of United who is not responsible for reviewing such claims. *See* ECF No. 12-3 at ¶¶ 3–8; ECF No. 13-6 at ¶¶1–4. It seems unremarkable to note that, at some point, even if one employee of a defendant corporation may have notice of certain claims, that employee's notice may alone be insufficient to impute knowledge onto the entire entity. For instance, if Friedman had communicated with a salesperson for United, would that impute notice? What about an administrative assistant?[9] *Cf. In re Hellenic Inc.*, 252 F.3d 391, 395 (5th Cir. 2001) (noting that an agent's knowledge is imputed to a corporation where the agent is acting within the scope of her authority but that "[t]he decision on whether to impute knowledge acquired by such employees tends to be fact-intensive and contingent on the specific legal regimes involved").

---

[9] In opposition to the Motions to Remand, United submitted evidence indicating that its legal department does not begin investigating claims until after a case is routed through its intake department and assigned to an attorney, and that Gimble had no knowledge that the instant lawsuits were filed until sometime in November 2015. *See* ECF No. 13-5 at ¶¶ 2–3; ECF No. 13-6 at ¶ 10.

The bright-line rule announced in *Lovern* was adopted to avoid these sorts of fact-intensive inquiries. *See Lovern*, 121 F.3d at 162. Although a defendant cannot ignore information clearly within its own control—such as knowledge of its domicile—in cases such as this, the basis of removal must be apparent from the four-corners of the initial pleading or "an amended pleading, motion, order or other paper." § 1446(b)(3); *see also Harvel v. Shadow Creek, LLC*, No. 4:14-CV-01045-BCW, 2015 WL 181716, at *2 (W.D. Mo. Jan. 14, 2015) (noting that the United States Court of Appeals for the Eighth Circuit has adopted a bright-line rule "by not requiring courts to inquire into what a particular defendant may or may not subjectively know" at the time of filing of the initial pleading and that this goal "would be eviscerated if this Court required Defendant to rely on Plaintiff's pre-suit demand letter to ascertain whether the case stated by a vague initial pleading is actually removable"). Here, the necessary information came on October 19, 2015 when Friedman provided Concepción with the information necessary to identify the policies that applied to each patient. *See* ECF No. 13-5 at ¶ 8. United's removal on November 17, 2015 was therefore timely.[10]

---

[10] In its reply, Bethesda Surgery argues that, because only an insurance company knows whether a health benefit plan falls under ERISA, a plaintiff is left with little recourse regarding removal. According to Bethesda Surgery, a plaintiff's only option is to either sue under a health benefit plan possibly covered by ERISA and include personal identifying information in violation of state and federal privacy laws, or to protect the privacy rights of patients "and allow the defendant insurer to remove after it decides that it has sufficient information to identify one of its own plans." ECF No. 19 at 6. In *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013), the United States Court of Appeals for the Ninth Circuit confronted a similar argument and noted that "[i]f plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained."

## III.    CONCLUSION

For the foregoing reasons Bethesda Surgery's Motions to Remand are **DENIED**. A

separate Order follows.


Dated: May    27  , 2016

_____
GEORGE J. HAZEL
United States District Judge